Verlin GANN, Petitioner,

v.

WORKERS' COMPENSATION AP-PEAL BOARD (MBS MANAGE-MENT/WELLINGTON EAST DE-VELOPMENT), Respondent.

MBS Management/Wellington East Development and State Workers' Insurance Fund, Petitioners,

v.

Workers' Compensation Appeal Board (Gann), Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 2001.

Decided Feb. 26, 2002.

---

Michael A. Murphy, Pittsburgh, for petitioner, V. Gann.

J. Brendan O'Brien, Pittsburgh, for respondent, MBS Management/Wellington East Development.

Before McGINLEY, Judge, SMITH–RIBNER, Judge and FLAHERTY, Senior Judge.

SMITH–RIBNER, Judge.

Verlin Gann and MBS Management (MBS) petition for review of a decision of the Workers' Compensation Appeal Board (Board) that reversed a decision of a

Workers' Compensation Judge (WCJ) which found that MBS is Gann's statutory employer and is responsible for paying Gann's workers' compensation benefits. Gann contends that the Board erred in reversing the WCJ's decision because the WCJ's finding that MBS acted as the general contractor on the subject construction project in Murrysville, Allegheny County, Pennsylvania, was supported by substantial evidence in the record and because the WCJ's conclusion that MBS was Gann's statutory employer was correct as a matter of law.[1]

I

The injury giving rise to this worker's compensation case occurred on July 31, 1995 at the Colony Court condominium construction project (hereafter "project"). For several weeks prior to the day of the injury, Gann worked as a construction laborer for the general contractor at the project. On the day in question, however, Ray Novak, the general contractor's superintendent, advised Gann to work for Watts Builders (Watts), an uninsured subcontractor performing framing work at Colony Courts. Novak advised Gann that Watts would be able to pay Gann more than the general contractor. Gann heeded Novak's advice and went to work for Watts. While employed by Watts that day, Gann slipped on sawdust and fell forty feet off of a roof, sustaining facial disfigurement, injuries to both of his hands, wrists, legs and feet and injuries to his torso. Gann underwent surgeries on his wrists for fractures and dislocation, left knee and left elbow and on his face. He now has steel plates inside his legs, and at the time of the first hearing he walked with a brace.

The essential question in this case is which of two legal entities was the general contractor for the project and therefore potentially liable for the payment of workers' compensation benefits. Stuart J. Barman controls both of these legal entities. They are MBS, which Barman controls as the president and 50 percent shareholder, and Wellington East Development, Limited Partnership (Wellington Partnership), which Barman controls as the president and 50 percent shareholder of its general partner, Wellington East Development Corporation (Wellington Corporation). The question of which entity was the general contractor is essential to the outcome of this case due to the rule that excludes property owners from statutory employer status. *See Smith v. Workmen's Compensation Appeal Board (Miller)*, 152 Pa. Cmwlth. 77, 618 A.2d 1101 (1992). Wellington Partnership owns Colony Court, and thus Gann cannot hold Wellington Partnership liable as the statutory employer if it was the general contractor. No such bar prevents Gann from holding MBS liable as the statutory employer if MBS was the general contractor.

Gann filed a claim petition against Watts, Wellington Corporation and MBS. Watts failed to file an answer. Wellington Corporation and MBS denied the allegations in Gann's claim petition. By decision dated September 9, 1996, the WCJ granted Gann's claim petition and found MBS liable as Gann's statutory employer for payment of workers' compensation benefits of $254.50 per week, plus 10 percent interest on all deferred compensation. She also ordered 12 weeks of compensa-

---

1. MBS asserts in its cross petition for review that, if Gann did meet his burden to prove that MBS was under contract with the owner of the premises, the Board's decision should nevertheless be affirmed on grounds that Gann failed to meet his burden to prove the other elements necessary to establish statutory employment.

tion for Gann's unsightly and disfiguring scar on his face. On June 22, 1998, the Board vacated the WCJ's decision and remanded the matter for the WCJ to make findings concerning whether the necessary elements of a statutory employer relationship were present. By decision dated February 4, 1999, the WCJ determined on remand that the necessary elements were present and decided again that MBS is Gann's statutory employer. The WCJ found as well that an insured contractor could not hide behind a complex scheme of corporate structures in an attempt to avoid its liability for compensation to an injured worker.

■ On appeal from the WCJ's decision on remand, the Board determined that, because there was no evidence in the record of a contract between MBS and Wellington Partnership, the WCJ's decision was not supported by substantial evidence. The Board found instead that Wellington Partnership was the general contractor and, accordingly, the Board reversed the WCJ's decision. The Court's review of the Board's order is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are not supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988). Whether an employer-employee relationship exists is a question of law based upon the WCJ's factual findings. *Workmen's Compensation Appeal Board v. Bond Transport, Inc.*, 22 Pa.Cmwlth. 86, 347 A.2d 788 (1975).

## II

■ In workers' compensation proceedings, the WCJ is the ultimate factfinder and has the sole prerogative of assessing credibility and resolving conflicts in

testimony. *See Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992). The Board must defer to the factual findings of the WCJ where the WCJ's findings are supported by substantial, competent evidence. Section 423(c) of Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by Section 18 of the Act of June 24, 1996, 77 P.S. §§ 854.2; *Growth Horizons, Inc. v. Workers' Compensation Appeal Board (Hall)*, 767 A.2d 619 (Pa.Cmwlth.2001). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Grabish v. Workmen's Compensation Appeal Board (Trueform Foundations, Inc.)*, 70 Pa.Cmwlth. 542, 453 A.2d 710 (1982).

Sections 302(a) and 302(b) of the Act, 77 P.S. §§ 461, 462, confer "statutory employer" status on certain entities for workers' compensation purposes; most commonly, it is conferred on a general contractor when a subcontractor fails to secure insurance. The sections provide in relevant part as follows:

**Subcontractor's employes; contractor's employes; "proof of insurance" defined.**

(a) A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor . . . .

(b) Any employer who permits the entry upon premises occupied by him or

under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. . . .

 It is well settled that an entity is deemed a statutory employer when the following five elements are met: (1) the entity is under contract with an owner or one in position of an owner; (2) the entity occupies or is in control of the premises; (3) the entity entered into a subcontract; (4) the entity entrusted a part of its regular business to the subcontractor; and (5) the injured party is an employee of such subcontractor. *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930); *Smith.*[2] The WCJ made the following findings to support her determination that all of the elements were met to establish a statutory employer relationship between Gann and MBS.

██ The WCJ found that MBS was under contract with Wellington Partnership, the owner of the project. The WCJ relied upon undisputed evidence in making this finding. The WCJ found that Barman was involved in the project and that he is the general partner of Wellington Partnership and the president and 50 percent share-

holder of MBS. Further, Gann worked for MBS prior to July 31, 1995, the workers' compensation insurance policy that was purchased for the project through SWIF listed MBS as one of the insured parties and during the time when Gann worked for the general contractor, MBS provided a W-2 form to the Internal Revenue Service for Gann, which listed MBS as Gann's employer. The insurance policy did not name Wellington Partnership. MBS offers alternate explanations for this evidence. However, neither this Court nor the Board may disturb the WCJ's findings where the evidence that the WCJ accepted constitutes substantial evidence. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board (Jakel)*, 31 Pa.Cmwlth. 590, 377 A.2d 1007 (1977).

The evidence on the record that Barman, as 50 percent owner of MBS, was undisputedly involved in the project and exercised control over the premises at Colony Court supports the WCJ's finding that MBS was in control of the premises at Colony Court. Similarly, the WCJ's finding that MBS entered into a subcontract with Watts is supported by evidence credited by the WCJ that Watts was hired directly by Barman and that Watts was working for MBS, the general contractor at the site.[3] MBS argues that Barman was acting on behalf of Wellington Partnership in his control over the project and when he hired Watts. Nevertheless, the previously mentioned W-2 form and the

2. Although courts have made comparisons between the statutory employer analyses under Section 302(b) and under Section 203 of the Act, 77 P.S. § 52, which relates to tort liability, nevertheless "the restrictive rules in negligence or tort cases (e.g., Section 203) must not be applied in workmen's compensation cases." *McGrail v. Workmen's Compensation Appeal Board (County of Lackawanna)*, 145 Pa.Cmwlth. 595, 605, 604 A.2d 1109, 1114 (1992).

3. *See also McGrail v. Workmen's Compensation Appeal Board (County of Lackawanna)*, 145 Pa.Cmwlth. 595, 604, 604 A.2d 1109, 1114 (1992) (quoting *Dume v. Elkcom Co., Inc.*, 368 Pa.Super. 280, 287, 533 A.2d 1063, 1067 (1987)("[P]rivity of contract is not required between the general contractor and the actual employer of the injured workman for purposes of liability for workmen's compensation benefits.")).

workers' compensation insurance policy, which did not name Wellington Partnership, provide substantial evidence to support the WCJ's finding that Barman was acting on behalf of MBS.[4]

The WCJ found that the regular business of MBS was the building of condominiums and that it entrusted part of this business, namely framing work, to Watts. Although MBS claims that its regular business was limited to managing apartment complexes, the WCJ's finding that the regular business of MBS included involvement in the building of condominiums is supported by the fact that MBS employed Gann in the months prior to his work injury. There is no dispute that Gann was working as a construction laborer for the general contractor at the project during that time. There is also no dispute that Gann was an employee of Watts at the time of his injury on July 31, 1995, establishing the last prong of the statutory employer test.

■ Accordingly, the Court holds that the WCJ's factual findings were supported by substantial evidence in the record. The WCJ's findings establish that MBS acted as the general contractor on the project and, because the subcontractor for whom Gann worked was uninsured, that MBS is liable as the statutory employer for the payment of Gann's workers' compensation benefits. *McDonald.* Thus because the Board erred in reversing the WCJ's decision, the Court is required to reverse the order of the Board and to order that the WCJ's decision holding MBS liable as the statutory employer be reinstated. The Court's decision comports with the Act's requirement for the liberal construction of its provisions to effectuate its humanitarian objectives. *Sporio v. Workmen's Compensation Appeal Board (Songer Constr.),* 553 Pa. 44, 717 A.2d 525 (1998).

## ORDER

AND NOW, this 26th day of February, 2002, the order of the Workers' Compensation Appeal Board is reversed, and the order of the Workers' Compensation Judge is hereby reinstated.

---

4. *See also Nineteen North, Inc. v. Workmen's Compensation Appeal Board,* 48 Pa.Cmwlth. 208, 409 A.2d 503 (1979) (court persuaded in part by evidence of IRS wage and tax statement in affirming Board decision holding general contractor liable as statutory employer); *Workmen's Compensation Appeal Board v.*

*Bond Transport, Inc.,* 22 Pa.Cmwlth. 86, 347 A.2d 788 (1975) (court held that carrying of individual on payroll records as employee and inclusion in workers' compensation insurance coverage is some indication of employer-employee relationship).